IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
ex rel.
Tania Lee                    Sealed

Plaintiffs,

v.                    Unsealed 1/28/09

ELA
Baptist Hospital
Hialeah Hospital
Hollywood Medical Center
Jackson Memorial South
Larkin Hospital
Mercy Hospital
Mt. Sinai Hospital
North Shore Hospital
Parkway Regional Medical Center
South Miami Baptist Hospital
South Shore Hospital
Westchester Hospital
Dr. Ali Bazzi
Dr. Michael Bhirhami
Dr. Manuel Miralles-Bouza
Dr. Henry Chua
Dr. Gilbert Concepcion
Dr. Juan Cueto
Dr. Jeffery Fox
Dr. Manuel Franco
Dr. Handre Hurwitt
Dr. Jaraki
Dr. Esther Levine
Dr. Humberto Machado Sr.
Dr. Humberto  Machado Jr.
Dr. Howard Reinfeild

Civil Action No._____

**FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX
DO NOT ENTER ON PACER**

1

Dr. Fernando Sende
Dr. Eric Spivack
Dr. Naaman Abdullah
Dr. Kevin Coy
Dr. John Dylewski
Dr. David Galbut
Dr. Peter Garcia
Dr. Ali Hamzei
Dr Awais Humayun
Dr. Roman Klos
Dr. Antonio Revilla
Shawn DeRosa
Scott D. Matthison

Defendants.

_____/

## FALSE CLAIMS ACT COMPLAINT
## AND DEMAND FOR JURY TRIAL

### I. Introduction

1. Ms. Tania Lee (the "relator") brings this action on behalf of the United

States of America against defendants for treble damages and civil penalties

arising from the defendants' false statements and false claims in violation of

the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* The violations arise out

of false certifications and false statements made in connection for billing for

various services connected to the implantation of cardiac pacemakers and

defibrillators (AICDs)

2. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the

2

relator has provided to the Attorney General of the United States and to the United States Attorney for the Souther District of Florida a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence known to relator at her filing establishing the existence of defendants' false claims. Because the statement includes attorney-client communications and work product of relator's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the relator understands this disclosure to be confidential.

## II. Jurisdiction and Venue

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§ 3729 *et seq.* and complained of herein took place in this District, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, defendants

transact and transacted business in this District.

## III. The Parties

5. Tania Lee is a former employee of ELA, a manufacturer of medical devices including cardiac pacemakers and defibrillators (AICDs). Ms. Lee is a certified cardio-vascular technician. Ms. Lee worked for ELA for two years, from 2003-2005. During that time, Ms. Lee held the position of Technical Services Representative. In that capacity, she provided cardiac pacemakers manufactured by ELA to cardiac surgeons prior to surgery and was present inside the operating room during the procedure to provide any technical assistance needed by the surgeon. The relator brings this action based on her direct, independent, and personal knowledge and also on information and belief.

6. Relator is an original source of this information to the United States. She has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under the False Claims Act which is based on the information.

7. Baptist Hospital, Hialeah Hospital, Hollywood Medical Center,

4

Jackson Memorial South, Larkin Hospital, Mercy Hospital, Mt. Sinai Hospital, North Shore Hospital, Parkway Regional Medical Center, South Miami Baptist Hospital, South Shore Hospital, and Westchester Hospital were the hospitals used to perform the surgeries and were the entities that billed for surgeries, equipment, and hospital stays.

8. Dr. Amer is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

9. Dr. Bhirhami is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

10. Dr. Miralles-Bouza is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

11. Dr. Ali Bazzi is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

12. Dr. Gilbert Concepcion is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

13. Dr. Manuel Franco who referred patients to other doctors for the express purpose of implanting ELA devices.

14. Dr. Jeffery Fox is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

15. Dr. Ali Hamzei is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

16. Dr. Awais Humayun is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

17. Dr. Fernando Sende is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

18. Dr. Charles Villoch is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

19. Dr. Roman Klos was an implanting doctor of ELA devices.

20. Dr. Humberto Machado Sr. is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

21. Dr Humberto Machado Jr. is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

22. Dr. Antonio Revilla was an implanting doctor of ELA devices.

23. Dr. Howard Reinfeild is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

24. Dr. Esther Levine is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

25. Dr. Jaraki is a cardiologist who referred patients to other doctors for

6

the express purpose of implanting ELA devices.

26. Dr. Eric Spivack is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

27. Dr. Handre Hurwitt is a cardiologist who referred patients to other doctors for the express purpose of implanting ELA devices.

28. Dr. Abdullah was an implanting doctor of EIA devices.

29. Dr. David Galbut was an implanting doctor of ELA devices.

30. Dr. Coy was a implanting doctor for EIA devices

31. Shawn De Rosa was an independent sales representative who sold ELA devices.

32. Scott D. Matthison was an independent sales representative who sold ELA devices.

## IV. The Program

33. The United States through the Centers for Medicare and Medicaid Services ("CMS") administers the Supplementary Medical Finance Program for the Aged and Disabled, established by Title XVIII of the Social Security Act, 42 U.S.C. ¶1395 et seq. ("The Medicare Program"). Medicare is a federally funded health insurance for eligible persons, including the disabled

and those over age 65. Persons who receive health insurance benefits from the Medicare Programs are referred to as "Medicare beneficiaries."

34. There are two parts to the Medicare Program. The first part is known as Medicare Part A. This is hospital insurance. It covers up to ninety days of eligible inpatient hospital care in any single "spell of illness" at qualifying hospitals. Eligible services generally include semi-private accommodations, nursing services, drugs, supplies, appliances and equipment, diagnostic or therapeutic items or services "ordinarily furnished to inpatients."

35. The second part, Medicare Part B, is insurance that helps pay for medical services and supplies provided by physicians and suppliers to Medicare beneficiaries not covered by Medicare Part A.

36. Private insurance companies, such as Blue Cross and Blue Shield, manage the Medicare Part A program for the United States. The private health insurance company is referred to as an "intermediary" or "fiscal intermediary."

## V. Facts Common to All Parties

37. ELA was one of the smallest of five manufacturers of cardiac pacemakers and defibrillators. The other companies being Medtronic,

Guidant, St. Jude, and Biotronic. Medtronic, Guidant, and St. Jude have contracts with hospitals to provide these devices for cardiac patients. ELA did not. As a consequence, in order to sell its pacemakers, ELA needed to convince cardiac surgeons and implanting physicians to use the ELA equipment. If the surgeon ordered ELA's equipment, the hospital would purchase the device from ELA and then file a claim for reimbursement from Medicare for its purchase.

38. Working through independent sales representatives, ELA created an elaborate scheme to compensate cardiac surgeons for the use of ELA pacemakers and defibrillators. ELA did this by encouraging cardiologists to refer their patients to various cardiac surgeons and implanting physicians. ELA did so in the following fashion.

(a) Cardiologists who referred patients to the surgeons and implanting physicians listed above were offered Holtor monitors and ambulatory equipment manufactured by ELA at a reduced price and on unusually favorable terms. These devices, worn by a patient for 24 hours, transmitted information to the doctors' offices where the patient's condition could be monitored on an outpatient basis. The doctors would be reimbursed by Medicare for this monitoring. The doctors signed a contract for the purchase

of this equipment, the first payment not being due until 90 days after receipt of the equipment. This enabled the doctors to bill Medicare per diagnostic exam essentially using Medicare to finance the purchase. Medicare would be billed $280 per exam.

(b) Cardiologists who referred patients to these physicians were compensated by ELA for participating in post implantation (post-market) studies. Ms. Lee would go to the cardiologist's office periodically to meet with patients to download information collected by the pacemaker. After each such study, documentation would be submitted to ELA via Federal Express and the physician would receive a payment from ELA. Often the payments were delivered by the independent sales representative. ELA used the independent sales representative as the conduit for the payments in order to solidify the relationship between the sale representative and the doctor. On average ELA paid the doctors $1200 per study. The patients were not told they were part of a post-market study.

(c) Cardiologists who referred patients to the listed physicians would one day each month have patients with existing multi-vendor pacemakers come to their offices to have their pacemakers checked. Ms. Lee was directed to go to these "clinics" to determine whether the batteries in the pacemakers

10

need replacement.

(i) although not authorized by any other manufacturer to do so, Ms. Lee was directed by ELA to check pacemakers manufactured by their competitors. She did so under the doctors' direct supervision;

(ii) if a battery needed replacement, the pacemaker would need to be removed in a surgical procedure;

(iii) the cardiologist would refer the patient to one of the listed physicians to replace the existing pacemaker with an ELA model;

(iv) the cardiologist would bill Medicare for the cost of the test performed by Ms. Lee.

(d) Cardiologists who referred patients to listed physicians were sent on ELA-sponsored and paid for trips. Cardiac surgeons and implanting physicians were also sent on these trips. Some of these trips included as destinations Vale, Colorado, Milan, Italy, other locations in Europe, Rio de Janeiro, Argentina and other locations in South America. ELA or their sales representatives would reimburse doctors for expenses incurred on other personal and unrelated trips claimed for educational purposes.

39. Baptist Hospital, Hialeah Hospital, Hollywood Medical Center, Jackson Memorial South, Larkin Hospital, Mercy Hospital, Mt. Sinai Hospital,

North Shore Hospital, Parkway Regional Medical Center, South Miami Baptist Hospital, South Shore Hospital, and Westchester Hospital were the hospitals used to perform the surgeries and were the entities that billed for surgeries, equipment, and hospital stays.

40. Dr. Amer referred patients to Drs. Abdullah and Galbut for surgery at Parkway Regional Medical Center. He conducted an all vendor pacemaker clinic one day per month.

41. Dr. Bhirhami referred patients to Drs. Abdullah and Galbut for surgery at Parkway Medical Center. He conducted an all vendor pacemaker clinic oneay day each month.

42. Dr. Miralles-Bouza conducted post market studies and referred patients to Hialeah Hospital for implantation of ELA devices.

43. Dr. Ali Bazzi referred patients to Parkway Regional Medical Center for implantation of ELA devices.

44. Dr. Gilbert Concepcion referred patients to South Miami Baptist Hospital for implantation of ELA devices.

45. Dr. Manuel Franco referred patients to Drs. Abdullah and Galbut for surgery at Parkway Medical Center. He conducted an all vendor pacemaker clinic one day per month.

12

46. Dr. Jeffery Fox referred patients to Drs. Abdullah and Galbut for surgery at Westchester Hospital. Dr. Fox conducted all vendor pacemaker clinics in his office and owns his own health insurance/HMO which had a contractual relationship with Westchester and Drs. Abdullah and Galbut.

47. Dr. Ali Hamzei referred patients to Mercy Hospital and Mt Sinai Hospital for implantation of ELA devices. He was also a primary investigator for ELA in their FDA phase 1, CRT Heart Failure Study.

48. Dr. Awais Humayun participated in post-market studies of ELA devices used by doctors he referred patients to at Mercy Hospital and Jackson Memorial Hospital.

49. Dr. Fernando Sende referred patients to Mt. Sinai Hospital. He purchased Holter monitoring system and helped to influence Mt. Sinai to use ELA as a vendor.

50. Dr. Charles Villoch referred patients to Mercy Hospital and participated in post-market research studies.

51. Dr. Roman Klos was an implanting doctor of ELA devices at Imperial Point Medical Center and Holy Cross Hospital and was a post- market study participant.

52. Dr. Humberto Machado Sr. referred patients to Drs. John Dylewski,

13

Ali Hamzei, and Awais Humayan at Mercy Hospital for implantation of ELA devices. Dr. Machado was a post-market study participant, received a Holter monitor, and received a trip to Italy provided by Shawn DeRosa

53. Dr Humberto Machado Jr. referred patients to Dr. John Dylewski at Mercy Hospital for implantation of ELA devices and received a Holter monitor system.

54. Dr. Antonio Revilla was an implanting doctor of ELA devices at Mercy Hospital and Larkin Hospital.

55. Dr. Howard Reinfeild referred patients to Drs. Abdullah and Galbut for surgery at Parkay Regional Medical Center and North Shore Hospital. He received a 24 hour blood pressure monitor.

56. Dr. Esther Levine referred patients to Mercy Hospital for implantation of ELA devices.

57. Dr. Jaraki referred patients to Drs. Abdullah and Galbut for surgery at Parkay Medical Center.

58. Dr. Eric Spivack referred patients to Drs. Abdullah and Galbut for surgery at Parkay Regional Medical Center. He conducted an all vendor pacemaker clinic one day per month. Dr. Spivak went on a ski trip with Mssrs. Matthison and DeRosa in March of 2005. Dr. Spivak told patients that they

14

could only use Drs. Abdullah and Galbut at Parkway.

59. Dr. Handre Hurwitt referred patients to Drs. Abdullah and Galbut for surgery at Parkway Medical Center. He conducted an all vendor pacemaker clinic one day per month and participated in post- market studies. He also went on a European cruise in April of 2005 with Mr. Matthison. From February 2005 to April 2005, 30 or more ELA defibrillators and pacemakers were implanted by doctors referred from this doctor.

60. Dr. Abdullah implanted more ELA devices than any other doctor at North Shore, Parkway, South Shore, South Miami, and Westchester hospitals.

61. Dr. David Galbut was Dr. Abdullay's partner at the same hospitals discussed above and was part owner of South Shore Hospital.

62. Dr. Coy was a implanting physician for ELA devices at Mercy Hospital. He received trips as compensation for implanting ELA pacemakers and AICDs. He was also involved in post-market and FDA studies.

15

## Count 1

### False Claims

### (31 U.S.C. §3729(a)(1))

63. Plaintiff/Relator repeats and realleges each and every allegation contained in paragraphs 1-62 above as though fully set forth herein again at length.

64. This is a claim for penalties and treble damages under the federal False Claims Act. 31 U.S.C. §3729 et seq.

65. By virtue of the acts described above, the defendants, for the purpose of defrauding the government, knowingly presented or caused to be presented to officers, employees or agents of the United States Government, false and fraudulent claims for approval under the Medicare and other federally funded programs.

66. As a result, federal monies were lost through payments of claims arising from services not allowable under law.

67. Therefore, the federal government has suffered a substantial amount of damages in an amount to be proved at trial, but believed to be in the millions of dollars.

68. Additionally, the federal government is entitled to the maximum

16

penalty of $10,000 for each and every false claim presented or caused to be presented by the defendants for payments made for services and equipment not allowed under Medicare laws and regulations.

## Count 2

### False Statements

### (31 U.S.C. §3729 (a)(2))

69. Plaintiff/Relator repeats and realleges each and every allegation contained in paragraphs 1-62 above as though fully set forth herein again at length.

70. This is a claim for penalties and treble damages under the federal False Claims Act. 31 U.S.C. §3729 *et seq.*

71. By virtue of the acts described above, the defendants, for the purpose of defrauding the government, knowingly presented or caused to be presented to officers, employees or agents of the United States Government, false and fraudulent claims for approval under the Medicare and other federally funded programs.

72. By virtue of the acts described above, the defendants knowingly made, used, or caused to be made or used false records and statements to

17

obtain federal government payment of false or fraudulent claims.

73. As a result, federal monies were lost through payments of claims arising from services not allowable under law.

74. Therefore, the federal government has suffered a substantial amount of damages in an amount to be proved at trial, but believed to be in the millions of dollars.

75. Additionally, the federal government is entitled to the maximum penalty of $10,000 for each and every false claim presented or caused to be presented by the defendants for payments made for services and equipment not allowed under Medicare laws and regulations.

## Count 3

## Conspiracy to Submit False Claims and Statements

## (31 U.S.C. §3729(a)(3))

76. Plaintiff/Relator repeats and realleges each and every allegation contained in paragraphs 1-62 above as though fully set forth herein again at length.

77. This is a claim for penalties and treble damages under the federal False Claims Act. 31 U.S.C. §3729 *et seq.*

18

78. By virtue of the acts described above, the defendants, for the purpose of defrauding the government, conspired to or caused to be presented to officers, employees or agents of the United States Government, false and fraudulent claims for approval under the Medicare and other federally funded programs and submitted false records and statements to obtain federal government payment of false or fraudulent claims.

79. As a result, federal monies were lost through payments of claims arising from services not allowable under law.

80. Therefore, the federal government has suffered a substantial amount of damages in an amount to be proved at trial, but believed to be in the millions of dollars.

81. Additionally, the federal government is entitled to the maximum penalty of $10,000 for each and every false claim presented or caused to be presented by the defendants for payments made for services and equipment not allowed under Medicare laws and regulations.

## Demand for Jury Trial

Plaintiff/Relator demands that her claim for relief against the defendants be tried to a jury to the full extent permitted by law.

Dated: May 15, 2006

19

Respectfully submitted,

Jon May, Esq.
Fla. Bar #276571
110 SE 6th Street
Suite 1970
Fort Lauderdale, FL 33301
954.761.7201 office
954.764.2443 fax
crimlawfed@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this complaint was served by certified U.S. Mail this 15th day of May, 2006 on:

Attorney General Alberto Gonzalez
U.S. Department of Justice
10th and Constitution Avenue
Washington D.C. 20044

Civil Process Clerk
United States Attorneys Office
99 NE 4th Street
Miami, FL 33132

Jon May, Esq.

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

United States of America;
Tania Lee

**DEFENDANTS**

ELA et al.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jon May, Esq.
100 SE 6th Street, Suite 1970
Fort Lauderdale, FL 33301
954 761 7201

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1   U.S. Government Plaintiff

☐ 3   Federal Question (U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☑ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

31 U.S.C. Sec. 3729 et seq. Suit on behalf of the United States for violation of the federal Civil False Claims Act

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   5/15/2006

FOR OFFICE USE ONLY
AMOUNT _____   RECEIPT # 94031 FP